UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTONIO W.,**[1]<br><br>Plaintiff,<br><br>v.<br><br>**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**[2]<br><br>Defendant. | Civil Action No.<br>20-cv-1920 |

## MEMORANDUM OPINION

Plaintiff Antonio W. seeks review of the final decision of the Acting Commissioner of Social Security, Dr. Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying his claim for Supplemental Security Income Benefits ("SSI"). ECF No. 12–1 at 1. Plaintiff alleges that Defendant's decision, which adopted the findings of an Administrative Law Judge ("ALJ"), is not supported by substantial evidence and is erroneous as a matter of law. *Id.* Plaintiff seeks either judgment as a matter of law in his favor or remand to the Social Security Administration ("SSA") for a new hearing. *Id.* Defendant moves for affirmance of the ALJ's decision. ECF No. 14 at 1–2.[3]

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited May 12, 2023).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for her predecessor. *See* Fed. R. Civ. P. 25(d).

[3] The relevant docket entries for purposes of this Opinion are: (1) the Administrative Record (ECF No. 8 and its attachments); (2) Plaintiff's Motion for Judgment of Reversal (ECF No. 12);

Having reviewed the Administrative Record,[4] the Parties' briefs, and the relevant law, this Court will **GRANT IN PART** and **DENY IN PART** the Parties' motions (ECF Nos. 12–1 and 14) and remand this case to the Social Security Administration for further proceedings consistent with this opinion.

## BACKGROUND

### A. THE SOCIAL SECURITY ACT

To qualify for benefits under the Social Security Act ("the Act"), the Commissioner must find that the claimant has a "disability." *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). At the first step, the claimant must prove that he is not engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step two, the claimant must show that he has a "severe medically determinable physical or mental impairment," or combination of impairments, which lasts for at least twelve consecutive months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4), 416.920(a)(4). The third step requires the claimant to prove that his impairment is equivalent to one of the impairments listed in the appendix of the relevant disability

---

(3) Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal (ECF No. 14); and (4) Plaintiff's Reply to Defendant's Memorandum in Support for Judgment of Affirmance (ECF No. 18). When referring to page numbers in the record, the Court uses the numbers assigned by the Court's CM/ECF system.

[4] Citations to the Administrative Record, ECF No. 8, are referred to as "AR." The Court will cite to the consecutive page numbers provided in the lower right-hand corner of each page of the AR.

regulation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1989) ("the Listings") (describing for each of the major body systems impairments considered severe enough to prevent an individual from doing gainful activity, regardless of age, education, or work experience).

If the claimant successfully satisfies the first three steps, the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If not, the inquiry proceeds to steps four and five following an assessment of the claimant's residual functional capacity ("RFC"). *See Hall v. Kijakazi*, No. 20-cv-2073, 2022 WL 343505, at *2 (D.D.C. Feb. 4, 2022) (citing 20 C.F.R. § 416.920(e)). The RFC is "what an individual can still do despite his or her limitations." SSR 96–8p, 1996 WL 374184, at *2. It requires an assessment "of the extent to which an individual's medically determinable impairment(s), including any related symptoms . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* The RFC reflects an individual's "*maximum* remaining ability to do sustained work activities." *Id.* (emphasis added).

At step four, the claimant must compare the RFC assessment with the physical and mental demands of his past relevant work and demonstrate that his impairments prevent him from performing that work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform in light of his age, education, work experience, and RFC. *See id.*; *see also Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). In making this determination, the ALJ may call upon a vocational expert to testify at the administrative hearing as to whether, based on the claimant's RFC, he can perform other work that exists in the national economy. *Callahan*, 786 F. Supp. 2d at 90. When testifying, the vocational expert may rely on sources such as the

Dictionary of Occupation Titles ("DOT"), which is a compilation of "'standardized occupational information' that provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker." *Id.* (citing DOT, 1991 WL 645964 (1991)).

### B. PLAINTIFF'S DISABILITY CLAIMS AND PROCEDURAL HISTORY

Plaintiff was born on February 24, 2001. AR at 233. At the time of the August 20, 2019, administrative hearing, Plaintiff was in the twelfth grade. AR at 54. Plaintiff lives with his mother in an apartment in Washington, D.C. ECF No. 12–1 at 2. Plaintiff was born prematurely and alleges that his disability began at birth. *Id.* at 1–2. His claims are based on physical impairments (including cerebral palsy, usage of leg braces, allergies, and asthma) as well as mental impairments (including mild recurrent major depression and attention deficit hyperactivity disorder ("ADHD")). AR at 40, 122. Although Plaintiff used to wear leg braces all day, as of the administrative hearing, he used them only while sleeping. AR at 462. Plaintiff also has a history of ADHD which has caused problems with attention and concentration. AR at 40. Plaintiff testified that he takes medication to manage his ADHD and allergies. AR at 38.

Plaintiff previously filed for SSI on June 28, 2013. AR at 25. The Commissioner denied Plaintiff's first application for SSI on August 9, 2013, and upon reconsideration on November 14, 2013. AR at 25. Plaintiff filed a second application for SSI benefits on August 29, 2017, which the Commissioner denied on October 24, 2017, and upon reconsideration on February 16, 2018. AR at 25, 149–51, 158–61. Plaintiff filed a written request for an administrative hearing on July 7, 2018, which the ALJ held on August 20, 2019. AR at 25.

C. THE ADMINISTRATIVE HEARING

At the hearing, the ALJ heard testimony from three witnesses: Plaintiff, his mother, and a vocational expert. AR at 50. When the ALJ questioned Plaintiff, he testified that he was eighteen years old and lived in an apartment with his mother. AR at 53–54. He explained that he was currently in the twelfth grade after being held back for one year because of his excessive absences. AR at 54. Plaintiff testified that he did not like attending school because his peers teased him for the way that he walks. AR at 55. Plaintiff also described his work history and shared that he has not completed any paid work since August 2017. AR at 65–66.

In addition, Plaintiff testified about his mental health. Plaintiff explained that he is capable of bathing and dressing himself without reminders. AR at 66–67. Plaintiff confirmed that he has an Individualized Educational Plan ("IEP") at school. AR at 58. Plaintiff testified that he has taken medication under his mother's supervision for suicidal ideations and ADHD. AR at 58–60. Plaintiff described that the medication to treat his suicidal ideations made him feel dizzy and light-headed, and as such, he stopped taking that medication approximately three months before the hearing. AR at 58. Plaintiff testified that he takes the ADHD medication only during the school year. AR at 60. Specifically, Plaintiff revealed that in the past, he experimented with self-mutilation and suicide, including attempting suicide at least two times by ingesting a large amount of medication. AR at 70–74. Despite his struggles with suicidal ideation and self-mutilation, Plaintiff testified that he no longer acts on those impulses due to his desire to live and care for his nieces and nephews. AR at 71.

Plaintiff also elaborated on his physical limitations. He explained that he spent the past summer stretching his legs to improve his walking before the new school year. AR at 56. Plaintiff

5

testified that he occasionally spends time playing pick-up basketball with his friends, but he cannot play for longer than an hour before experiencing pain in his legs. AR at 60–62.

Vocational expert Robert Edwards was the second witness to testify during the hearing. AR at 78. The ALJ asked Edwards a hypothetical question about an individual of the same age and education as Plaintiff. AR at 78–79. The ALJ instructed Edwards to assume that the hypothetical person could perform only medium work and limited the individual's job prospects to "simple, routine, repetitive tasks," and "[n]o production rate or pace of work." AR at 78–79. Furthermore, the ALJ asked Edwards to assume that the hypothetical individual could frequently climb ramps and stairs and stoop, occasionally climb ropes, ladders, and scaffolds, occasionally interact with the general public and coworkers, and occasionally tolerate changes in the work setting. AR at 78–79. Assuming those parameters, Edwards testified that the hypothetical individual could perform medium unskilled jobs, such as a sandwich maker, a grocery bagger, and a night stocker. AR at 79.

The ALJ then modified his hypothetical question in two ways to limit the capacity of the hypothetical individual. AR at 79. First, the ALJ asked Edwards if jobs in the national economy would exist if the hypothetical person could only *occasionally* interact with supervisors. AR at 79 (emphasis added). Second, the ALJ asked if jobs in the national economy would exist if the hypothetical person could only *occasionally* climb ramps and stairs, and stoop, and *never* climb ramps, ladders, or scaffolds. AR at 79 (emphasis added). Edwards responded that the modifications would make no difference in the number of jobs available for the hypothetical person. AR at 79.

Plaintiff's mother Stacey W. testified as the final witness. AR at 84. Stacey W. first discussed Plaintiff's medications. AR at 84. She explained that Plaintiff takes medication for

6

sleeping, ADHD, and depression with suicidal ideation. AR at 84. While being questioned by Plaintiff's attorney, Stacey W. explained that Plaintiff wore braces on his legs until he was fifteen years old. AR at 89. After that point, Plaintiff only wore leg braces overnight. AR at 89. Stacey W. explained that Plaintiff cannot walk for long periods and is unable to walk up the stairs. AR at 89. Stacey W. testified that Plaintiff had three surgeries on each of his legs—two to each of his right and left Achilles' tendons and one to the backside of his right and left knees. AR at 90–91. Stacey W. explained that when Plaintiff complains about pain in his legs, she has to massage his legs to ease the tension in his muscles. AR at 90.

Stacey W. concluded her testimony by discussing Plaintiff's mental health and interactions with others. AR at 93–97. Stacey W. shared more details about Plaintiff's suicidal ideations and suicide attempts. AR at 93. She explained that Plaintiff attempted to overdose on Benadryl, but Stacey W. made him spit out the pills. AR at 96. Plaintiff verbally threatened to use a firearm, but Stacey W. never physically saw Plaintiff with a weapon. AR at 96. Finally, although Plaintiff was conscious of the attention his manner of walking received when out in public, Plaintiff was generally able to make friends outside of his family. AR at 97.

### D. THE ALJ'S DECISION

The ALJ issued his decision on September 24, 2019, finding that Plaintiff was not disabled under the Act. AR at 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, August 29, 2017. AR at 29. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) cerebral palsy; (2) ADHD; (3) affective mood disorder; and (4) learning disorder. AR at 29.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or is the medical equivalent of one of the Listings. AR at 29–30.

Specifically, the ALJ considered listings 11.00, 12.05, and 112.05. AR at 29–32. Under Listing 11.00 (Neurological Disorders), the ALJ found that Plaintiff's joints were generally stable even though his range of motion was impaired. AR at 29. The ALJ also found that Plaintiff did not require help getting up from a seated position or have any deficiencies with his bilateral grip strength. AR at 29–30. Furthermore, the ALJ noted that Plaintiff testified that he plays basketball with his friends and can run and jump. AR at 30.

Under Listing 12.05 (Intellectual Disorder), the ALJ found that Plaintiff's impairments did not satisfy the "Paragraph A" criteria because Plaintiff was not dependent on others for basic needs such as bathing, dressing, or eating.[5] AR at 30. The ALJ found that Plaintiff did not satisfy the "Paragraph B" criteria because Plaintiff had only moderate or mild limitations in the three areas of mental functioning evaluated.[6] AR at 31. The ALJ found that Plaintiff did not satisfy the "Paragraph C" criteria because Plaintiff "has more than minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." AR at 32.

Under Listing 112.05 (Intellectual Disorder), the ALJ found that Plaintiff had, at most, less than marked limitation in each of the six functional equivalence domains. AR at 32. The ALJ found that Plaintiff had no limitation in acquiring and using information and caring for himself. AR at 32–36. Additionally, the ALJ found that Plaintiff had less than marked limitation in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and health and physical wellbeing. AR at 32–36.

---

[5] To satisfy the Paragraph A criteria under Listing 12.05, a claimant must show "[s]ignificantly subaverage general intellectual functioning . . . significant deficits in current adaptive functioning . . . and [] evidence [that] the disorder began prior to [claimant's] attainment of age 22."

[6] Paragraph B requires (1) significantly subaverage general intellectual functioning, (2) significant deficits in adaptive functioning, (3) evidence that these intellectual and adaptive impairments support the conclusion that the disorder began prior to attainment of age twenty–two.

At step four, the ALJ determined that Plaintiff had the RFC to perform medium work with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs, occasionally climb ropes, ladders, and scaffolds, and frequently stoop. He must avoid concentrated exposure to fumes, odors, dusts, and gases. [Plaintiff] is limited to jobs involving simple, routine, repetitive tasks, occasional changes in the work setting, occasional judgment or decisionmaking, and where there would be no production rate for pace of work. He can occasionally interact with the general public and co-workers.

AR at 37–38. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff can perform. AR at 42.

When assessing Plaintiff's RFC in conjunction with steps four and five, the ALJ considered the hearing testimony, prior administrative medical findings, and the medical evidence and opinions of record. AR at 37. In concluding that Plaintiff was not disabled, the ALJ evaluated "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR at 37. The ALJ also reviewed opinion evidence on Plaintiff's physical and mental impairments from the following: Drs. Gregor Price and Elizabeth Nolte, Licensed Independent Clinical Social Worker Eva Ogbuokiri, and Licensed Independent Social Worker Daryl Lowe. AR at 39–40.

The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on May 12, 2020. AR at 1.

## **LEGAL STANDARD**

A federal district court has jurisdiction over a challenge to the final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal

9

standards. *Id.*; *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This standard "'requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.'" *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). Ultimately, substantial evidence is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).

On review, the Court may not reweigh the evidence. *Butler*, 353 F.3d at 999. Instead, it is the Court's role to "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009). In performing this role, the Court must ". . . be mindful of the harmless-error rule. Consequently, even if [the Court] perceive[s] error," it must "affirm the Commission's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (internal citation omitted).

"'[P]laintiff bears the burden of demonstrating that the Commissioner's decision [is] not based on substantial evidence or that incorrect legal standards were applied.'" *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11–1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)). If the plaintiff meets this burden and the Court finds the ALJ erred, the Court may reverse and remand, requiring the ALJ to conduct further proceedings

consistent with the law.  *See, e.g.*, *Jackson v. Barnhart*, 271 F. Supp. 2d. 30, 38 (D.D.C. 2002). Conversely, if the Court finds that the ALJ based his decision on substantial evidence and applied the correct legal standards, the Court may grant the Commissioner's motion for affirmance.  *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010).

## DISCUSSION

Plaintiff advances three arguments in support of his claim that the ALJ erroneously assessed his RFC.  First, Plaintiff claims that the ALJ failed to adequately explain the evidence upon which he relied to make his determination and specifically failed to explain the term "production rate for pace of work."  ECF No. 12–1 at 6.  Second, Plaintiff asserts that the ALJ failed to include limitations on concentration, persistence, or pace in both the RFC assessment and the hypothetical question posed to the vocational expert.  *Id.* at 9.  Finally, Plaintiff argues that the ALJ failed to perform a proper function-by-function assessment of Plaintiff's abilities to perform work-related activities.  *Id.* at 13.

### A. THE ALJ ADEQUATELY EXPLAINED THE EVIDENCE UPON WHICH HE RELIED

Plaintiff takes issue with the ALJ's conclusion that Plaintiff could perform "simple, routine, repetitive tasks, with *no production rate for pace of work*."  *Id.* at 6 (emphasis added); AR at 37.  Plaintiff claims that the phrase "production rate for pace of work" does not contain sufficient information for this Court to determine whether the ALJ logically applied the available evidence when forming Plaintiff's RFC.  ECF No. 12–1 at 9.  Consequently, Plaintiff argues the ALJ's RFC assessment defies review and requires reversal.  *Id.*

Defendant argues that Plaintiff erroneously analogizes the phrase "no production rate for pace of work" in this case to the phrase "production rate or demand pace" found in *Thomas v. Berryhill*, 916 F.3d 307, 312–13 (4th Cir. 2019).  ECF No. 14 at 18–21.  Defendant claims this

11

analogy is erroneous for two reasons. First, the phrase used in this case is commonly used and self-explanatory. *Id.* at 19. Second, the ALJ provided additional context within the RFC to logically explain how the RFC limitation addresses Plaintiff's ability to concentrate, persist, or maintain pace. *Id.* at 21. This Court agrees with Defendant.

In rendering his decision, the ALJ must provide "a statement of the case, *in understandable language*, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1) (emphasis added). In other words, "[a]n ALJ must supply a rationale for his or her decision." *Rice v. Massanari*, No. 01–1349 (GK), 2002 WL 34504634, at *2 (D.D.C. Aug. 16, 2022). The U.S. Court of Appeals for the Fourth Circuit has previously held that RFC formulations with vague language do not meet this standard. In *Thomas*, the Fourth Circuit remanded a case where the ALJ limited the claimant to work that did not "requir[e] a production rate or demand pace" because the phrase was not a common, vocationally relevant functional limitation. 916 F.3d at 312. Because (1) the court was not certain of the precise limitations that were created by the phrase in the claimant's RFC and (2) the ALJ did not explain what he meant by the phrase, the court determined that the phrase's ambiguity frustrated its ability to conduct meaningful appellate review. *Id.*

Unlike in *Thomas*, the ALJ here provided enough information for this Court to understand "production rate for pace of work." "Production rate for pace of work" is most analogous to the phrase addressed in *Johnson v. Saul*, No. 19–cv–3829–RCL, 2021 WL 411202, at *6 n.5 (D.D.C. Feb. 5, 2021). In *Johnson*, the plaintiff objected to the ALJ's use of the term "non-production rate pace of work," claiming that the phrase was too vague to determine whether the ALJ properly accounted for the plaintiff's concentration, persistence, and pace ("CPP") limitations. *Id.* On review, the district court rejected that argument, finding that the phrase clearly precluded work

12

that included production goals. *Id.* Although the court ultimately found that the ALJ did not adequately capture plaintiff's CPP limitations, that error was not based on the alleged "vagueness" of the phrase "non-production rate pace of work." *Id.*

The holding in *Johnson* is persuasive here when interpreting "production rate for pace of work." Although it may have been helpful for the ALJ to include additional context, the phrase "production rate for pace of work" is not so vague as to preclude meaningful review. Limiting Plaintiff to jobs "where there would be no production rate for pace of work" "plainly indicate[s] that [P]laintiff is precluded from work that includes production goals." AR at 37; 2021 WL 411202, at *6 n.5. Furthermore, the definition of "production rate pace" appears in the Dictionary of Occupation Titles ("DOT"), which explains how the term should be viewed in the context of Light Work job positions.[7] 1991 WL 688702.

Plaintiff cites to several cases that mention similar, but not identical, phrases and asserts that they are analogous to the phrase at issue in this case.[8] These cases are unpersuasive. For one, none of the cases involve the phrase "production rate for pace of work." Second, none of the phrases in the other cases Plaintiff cites appear in the DOT, a point that Plaintiff fails to address.

---

[7] The DOT explains that a job should be considered Light Work when, among other requirements, the job "requires working at a *production rate pace* entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." 1991 WL 688702 (emphasis added). The DOT goes on to note that "[t]he constant stress and strain of maintaining a *production rate pace*, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* (emphasis added).

[8] In addition to the phrase at issue in *Thomas*, Plaintiff also relies on *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) ("non-production oriented work setting"); *Geneva W. v. Comm'r, Soc. Sec. Admin*, No. CV SAG–18–1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("production pace or strict production quotas"); *Yvonne M. v. Comm'r, Soc. Sec. Admin.*, No. CV 18–2034–RDB, 2019 WL 2058834, at *2 (D. Md. May 9, 2019) ("work environment free of fast-paced production requirements"); *Mirlin T. v. Kijakazi*, No. 20–cv–00960 (RJL/GMH), 2021 WL 9217635, at *9 (D.D.C. Aug. 24, 2021) ("without fast pace or strict production quotas").

ECF No. 12–1 at 6–9; ECF No. 18 at 2–3. Because the ALJ's use of the phrase "no production rate for pace of work" is "common enough for [the Court] to know what [it] mean[s] without elaboration," the Court can meaningfully review the RFC the ALJ has crafted. *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. 18–1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) (internal citation omitted).

### B. THE ALJ PERFORMED A PROPER FUNCTION-BY-FUNCTION ASSESSMENT OF THE PLAINTIFF'S ABILITY TO PERFORM WORK-RELATED ACTIVITIES

Plaintiff claims that the ALJ did not perform a proper function-by-function analysis of Plaintiff's ability to perform work-related activities. ECF No. 12–1 at 13. Plaintiff relies principally on *Dowling v. Comm'r of SSA*, 986 F.3d 377, 387–88 (4th Cir. 2021), to argue that the ALJ erred by failing to follow the RFC analysis order prescribed by the Fourth Circuit. *Id.* at 14. Defendant maintains that the ALJ's RFC analysis provided a logical explanation of Plaintiff's ability to perform a reduced range of medium exertional work in light of Plaintiff's physical impairments. ECF No. 14 at 24–25. Defendant further claims that *Dowling* is both nonbinding and inapposite. *Id.* at 23–24.

An RFC analysis must include "a narrative discussion describing how the evidence supports each conclusion." *Johnson v. Astrue*, No. CIV.A 11–00788 ABJ/DAR, 2012 WL 3292416 (D.D.C. Aug. 12, 2012). In the analysis, the ALJ must build a logical bridge from the evidence to his conclusion about the Plaintiff's RFC. *Id.* (citing *Banks v. Astrue*, 537 F.Supp.2d 75, 84 (D.D.C. 2008)). As Plaintiff has emphasized, the Fourth Circuit has held that an ALJ's RFC analysis should follow a specific order. Namely, RFC analyses must begin with (1) the evidence, followed by (2) a logical explanation, and ending with (3) a conclusion. *Dowling*, 986 F.3d at 388; *Thomas*, 916 F.3d at 311. Importantly, however, "*Dowling* stops short of 'adopt[ing] a *per se* rule requiring remand where the ALJ does not perform an explicit-function-by-function

14

analysis.'" *Jamil D. v. Kijakazi*, No. 21–cv–464 (GMH), 2022 WL 910334, at *11 n.10 (D.D.C. Sept. 29, 2022) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)).

Here, the ALJ's failure to strictly follow the Fourth Circuit's "proper RFC analysis order" does not warrant remand. *Id.* at 387–88. The ALJ began his RFC assessment by concluding that Plaintiff can perform medium work with certain limitations. AR at 37. After finding that Plaintiff had the RFC to perform medium work with certain limitations, the ALJ proceeded to identify Plaintiff's physical and mental limitations. AR at 37–38. Plaintiff specifically claims that the ALJ failed to explain how Plaintiff would be able to perform medium work activity given his lower extremity impairments. ECF No. 12–1 at 16. The ALJ, however, acknowledged that Plaintiff's cerebral palsy diagnosis impacts Plaintiff's ability to walk. *Id.* The ALJ then noted that Plaintiff is still able to overcome the challenges he faces when walking to occasionally play pickup basketball, groom himself, and do his own laundry. *Id.* Although the ALJ recognized Plaintiff's various physical impairments, the ALJ stated that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the objective evidence which suggests they are not disabling. AR at 38. The ALJ then noted that Plaintiff had normal motor skills for his age. AR at 39. Furthermore, Plaintiff had a normal stance and used no assistive device to walk or squat. AR at 38. Plaintiff had no signs of any joint or cervical abnormalities. AR at 38. Moreover, Plaintiff had normal reflexes, normal grip strength, normal range of motion in his spine, and full range of motion of his hips. AR at 38.

Plaintiff also takes issue with the ALJ's decision not to include any limitation on Plaintiff's ability to stand and/or walk, despite Dr. Elizabeth Nolte's opinion that Plaintiff should "avoid prolonged walking, walking on uneven surfaces, and climbing ladders." ECF No. 12–1 at 16 Plaintiff argues that the ALJ failed to explain his "implicit rejection" of Dr. Nolte's opinions. *Id.*

Plaintiff's arguments are unavailing for two reasons. First, although an ALJ is required to explain his logical reasoning for disregarding portions of a medical opinion, he is not obligated to accept every part of a medical opinion, even if he finds the opinion persuasive. *Patricia T. v. Kijakazi*, No. 21–cv–1028, 2022 WL 3583634, at \*34–35 (D.D.C. Aug. 22, 2022); *see also Long v. Berryhill*, No. 18–cv–1146, 2019 WL 1433077, at \*11–12 (E.D.N.Y. Mar. 29, 2019). Here, there is no evidence that the ALJ "implicitly rejected" Dr. Nolte's opinions. The ALJ explained that he would "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)," including those from Plaintiff's treating sources, like Dr. Nolte. AR at 40. The ALJ then mentioned that Dr. Nolte opined that Plaintiff had only mild limitations in walking, climbing, and squatting. AR at 41. Contrary to Plaintiff's claims, these mild limitations are consistent with the ALJ's RFC stating that Plaintiff could perform medium work with certain limitations. AR at 37.

Second, the ALJ is required to determine *the most* a claimant can do despite his potential limitations. 20 C.F.R. § 416.946 (emphasis added). Although the ALJ found Dr. Nolte's opinion persuasive, the ALJ adequately explained why objective evidence reflected that Plaintiff's symptoms are not disabling.[9] After a lengthy discussion of the evidence and Plaintiff's walking limitations, the ALJ provided a sufficient narrative discussion of the evidence. AR at 37–41.

### C. THE ALJ FAILED TO ADEQUATELY CAPTURE PLAINTIFF'S MENTAL LIMITATIONS IN CONCENTRATION, PERSISTENCE, AND PACE IN THE RFC AND HYPOTHETICALS

Plaintiff argues that the ALJ failed to include any limitation on concentration, persistence, or pace ("CPP") in either the RFC assessment or the hypothetical questions posed to the vocational

---

[9] For example, although Plaintiff testified that he could not walk around for too long and his left leg occasionally gives out on him, Plaintiff did not use an assistive device to ambulate. AR at 40. Furthermore, Plaintiff's stance and range of spine motion were normal. AR at 39. Plaintiff had full range of motion of his hips, and his joints were stable and non-tender. *Id.*

16

expert. ECF No. 12–1 at 9. Plaintiff primarily relies on *Mascio v. Colvin* to support this argument. 780 F.3d at 638 (holding that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work'") (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.)). In response, Defendant attempts to distinguish *Mascio* from this case and claims that the ALJ accounted for Plaintiff's CPP limitations in the RFC by limiting Plaintiff to simple tasks, tasks repetitive in nature, and minimal social interactions. ECF No. 14 at 21–23.

When posing hypothetical questions to a vocational expert, the ALJ must accurately describe the claimant's impairments so the expert may adequately assess whether jobs exist for the claimant in the national economy. *See Butler*, 353 F.3d at 1005; *Petty v. Colvin*, 204 F. Supp. 3d 196, 205 (D.D.C. 2016). Moderate limitations in CPP affect a plaintiff's ability to sustain focused attention and concentration long enough to complete tasks in common work settings on a timely basis. *See Johnson*, 2021 WL 411202, at *6; *Petty*, 204 F. Supp. 3d at 206 (D.D.C. 2016). In *Petty*, this Court adopted the view of most federal courts of appeal and held that an ALJ does not properly account for a claimant's limitations in CPP by restricting hypothetical claimants to simple, routine tasks or unskilled work. 204 F. Supp. 3d at 206. As the Court held, "[f]ailure to accurately describe a claimant's impairments can serve as grounds for reversal because it undermines the expert's testimony that a claimant can perform other work." *Id.* at 205 (citing *Butler*, 353 F.3d at 1006).

As previously explained, however, there is no need to remand if the ALJ commits a harmless error. *Johnson*, 2021 WL 411202, at *6; *see supra* p. 10. An error related to CPP limitations is harmless if it meets either of two prongs: (1) medical evidence supports that claimant can engage in simple, routine tasks or unskilled work despite limitations in CPP, and the disputed

hypothetical is limited to include only unskilled work; or (2) the hypothetical implicitly accounts for claimant's limitations in CPP. *See Johnson*, 2021 WL 411202, at *6; *Petty*, 204 F. Supp. 3d at 206; *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014).

Here, neither the ALJ's hypothetical questions to the vocational expert nor the RFC adequately capture Plaintiff's moderate CPP limitations. Much like in *Petty*, limiting Plaintiff's work to simple, routine, and repetitive tasks does not adequately account for Plaintiff's moderate CPP limitations because "the ability to perform simple tasks differs from the ability to stay on task." 204 F. Supp. 3d at 206 (quoting *Mascio v. Astrue*, 780 F.3d 632, 638 (4th Cir. 2015)). Notably, the ALJ did not mention Plaintiff's inability to stay on task in either of the hypothetical questions posed, AR at 78–79, and the RFC makes no mention of Plaintiff's mental limitations. AR at 37.

Defendant argues that, even if the ALJ's hypothetical questions and RFC insufficiently accounted for Plaintiff's CPP limitations, any such error is harmless. Defendant emphasizes that the ALJ's RFC limited Plaintiff's interactions with others, only required Plaintiff to make occasional judgments or decisions, and limited Plaintiff to occasional changes in the work setting to reduce distractions. ECF No. 14 at 21–23. None of these limitations have anything to do with whether Plaintiff can perform certain job tasks with moderate limitations in CPP. Moreover, the ALJ's errors do not meet either of the requirements to be considered harmless. First, the ALJ did not restrict his hypothetical questions or RFC to unskilled work. AR at 78–79, 37; *see also Johnson*, 2021 WL 411202, at *6. Second, the ALJ's hypotheticals do not "implicitly account[]" for Plaintiff's CPP limitations. Although Defendant claims that the record "does not support additional mental limitations," this argument resembles the flawed argument made in *Petty*. There, the Court held that the absence of evidence is improper to support a finding that Plaintiff can

engage in simple, routine, low stress tasks. 204 F. Supp. 3d at 207–08. In the absence of affirmative evidence showing that Plaintiff can perform work despite moderate CPP limitations, the Defendant has failed to meet her burden of proving that the ALJ's error was harmless.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reversal, ECF No. 12–1, is **GRANTED IN PART** with respect to the ALJ's failure to adequately account for and capture Plaintiff's CPP limitations. That issue is **REMANDED** to the Social Security Administration for further proceedings consistent with this memorandum opinion. Plaintiff's Motion for Reversal, ECF No. 12–1, is **DENIED IN PART** on all other claims. For the reasons also stated above, Defendant's Motion for Judgment of Affirmance, ECF No. 14, is **GRANTED IN PART** and **DENIED IN PART.**

SO ORDERED.

Date: June 2, 2023

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE